UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David Josef Lovejoy, also known as
Kendra Michelle Lovejoy,

                    Plaintiff,                    Court File No. 16-cv-2468 (JRT/LIB)

        v.

                                                  **REPORT AND RECOMMENDATION**

Minnesota Department of Human Services, et al.


                    Defendants.


This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral, made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), [Docket No. 13], and upon Defendants' Motion to Dismiss, [Docket No. 7].

For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 7], be **GRANTED**.

## I.    BACKGROUND  AND STATEMENT OF ALLEGED FACTS[1]

David Josef Lovejoy ("Plaintiff"), also known as Kendra Michelle Lovejoy, is civilly committed to the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. (Compl., [Docket No. 1], 1, 5; Notice to Court, [Docket No. 5], 1). Although Plaintiff has not

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court accepts the facts alleged in the complaint as true and construes them in the light most favorable to Plaintiff. See Carlsen v. Game Stop, Inc., 833 F.3d 903, 908 (2016) (stating that a facial attack on jurisdiction under Rule 12(b)(1) receives Rule 12(b)(6) protection, so a reviewing court must accept as true all facts alleged in the complaint). Although the Court generally may not consider materials outside the pleadings when deciding a motion to dismiss under Rule 12(b)(6), the Court may consider "'materials that are necessarily embraced by the pleadings,'" such as the documents the parties here agree establish that Plaintiff was committed to the MSOP at the time the Complaint was filed. See Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015).

been clinically diagnosed with gender dysphoria, she[2] identifies as transgender and is beginning to transition from male to female. (Compl., [Docket No. 1], 2-3, 6). Because of this, Plaintiff finds the use of her birth name, David, to be "a painful reminder of the discrepancy between [Plaintiff's] female gender identity and the male sex assigned to her at birth." (Id. at 7). While civilly committed to the MSOP, Plaintiff has received multiple Behavioral Expectations Reports ("BER's") from MSOP staff which were "related to [her] sexual identification," including one BER for lying and misrepresentation, which Plaintiff received after signing another BER with her preferred name, Kendra Michelle Lovejoy, instead of her birth name. (Id. at 6).

When Plaintiff asked MSOP staff to utilize the Standards of Care for Transgender Health issued by the World Professional Association for Transgender Health ("WPATH"), Plaintiff was informed that using the Standards was not required. (Id.). The Standards of Care for Transgender Health recognize, among other things, that a name change is an important part of treatment for gender dysphoria. (Id. at 7). Plaintiff also alleges that Defendant Edward Kesty, the evening Security Counselor Lead on the unit to which Plaintiff is assigned, has taken "numerous degrading and defaming actions" against her, to the extent that Plaintiff avoids coming out of her room, except at mealtime, when Defendant Kesty is on duty. (Id. at 3, 7).

On July 20, 2016, Plaintiff filed a Complaint initiating the case now before this Court. (Id. at 1). She named as defendants:  Edward Kesty; the Minnesota Department of Human Services ("DHS"); the MSOP; Randall Gordon, the Behavior Expectations Unit ("BEU") Director, who supervises security staff, reviews BER's, and conducts BEU hearings at the Moose Lake MSOP facility; Peter Puffer, the Clinical Director who supervises clinical staff and the implementation of standards of care at the Moose Lake MSOP facility; Kevin Moser, the Facility

---

[2] Although Plaintiff utilized both male and female pronouns in the Complaint, Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, [Docket No. 15], consistently uses the female pronoun to refer to Plaintiff. In accordance with Plaintiff's preference, this Court will also refer to Plaintiff using the female pronoun.

Director at the Moose Lake MSOP facility; and both John and Jane Doe Defendants, whose identities were unknown but who allegedly "acted in a manner that was offensive and discriminatory toward Plaintiff" by "implement[ing], retain[ing] and carr[ying] out the denial of Plaintiff's constitutional, statutory, and common law rights." (Id. at 3-4). Plaintiff brought claims against all of the individual defendants in both their individual and official capacities. (Id.).

In her Complaint, Plaintiff alleged that Defendants' discriminatory actions against her violate Defendants' own anti-discrimination policies and have caused Plaintiff emotional trauma, anguish, shame, embarrassment, distress, and diminished quality and enjoyment of life. (Id. at 7-8).

In Count I, Plaintiff alleges that Defendants unlawfully discriminated against her "on the basis of her sexual orientation and the fact that she prefers to be identified as a female and not the (male) gender marker that was assigned her"; all in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, et seq. (Id. at 9). Count II asserts that Defendants' actions denied Plaintiff treatment given to other MSOP residents, thereby constituting unlawful discrimination against Plaintiff "based on sexual orientation"; in violation of the Minnesota Human Rights Act ("MHRA"). (Id. at 10). Count III of the Complaint purports to bring due process and equal protection claims under 42 U.S.C. § 1983, asserting a violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution. (Id. at 10-11). In Count IV, Plaintiff claims that Defendant's actions violated her rights under the First Amendment to the United States Constitution by denying her the right to express "how Plaintiff sees herself and feels as a person who is in the wrong body." (Id. at 12).

For relief, Plaintiff requests a declaratory judgment stating that Defendants have discriminated against Plaintiff in violation of Title II of the Civil Rights Act of 1964, the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution, the corresponding provision within the Minnesota Constitution, and the MHRA. (Id.). She also asks the Court to order the MSOP to "create a policy specifically related to transgender patients within the MSOP allowing for use of female name and pronouns." (Id. at 12-13). Additionally, Plaintiff seeks a permanent injunction barring discrimination against transgender individuals by MSOP staff and asks for compensatory and punitive monetary damages. (Id.).

After this Court granted Plaintiff's Application for Leave to Proceed in Forma Pauperis, Defendants filed a Motion to Dismiss on October 5, 2016. (See, Order, [Docket No. 3]; Motion to Dismiss, [Docket No. 7]). In their accompanying Memorandum in Support, Defendants argued that this Court should dismiss Plaintiff's Complaint either for lack of federal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or for a failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (Mem. in Supp., [Docket No. 9], 3). Plaintiff filed a Memorandum in Opposition to the Motion on October 25, 2016, and Defendants filed their Reply on November 9, 2016. (Mem. in Opp., [Docket No. 15]; Reply, [Docket No. 16]). At that point, this Court took the Motion to Dismiss under advisement on the parties' written submissions. (See, Order, [Docket No. 14]).

## II.   DEFENDANTS' MOTION TO DISMISS [Docket No. 7]

### A.  Standards of Review

*Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). Rule 12(b)(1) of the Federal Rules of Civil Procedural provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction, challenging either the sufficiency of the pleading on its face or the factual truthfulness of its allegations. See Branson Label, Inc. v. City of

Branson, 793 F.3d 910, 914-15 (8th Cir. 2015). When, as here, the moving party raises a facial challenge, "'the court merely [needs] to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction.' Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" See Id. at 914 (quoting Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990), and Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).

Accordingly, when evaluating a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57).

Section 1983 establishes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a federal or Constitutional right. 42 U.S.C. § 1983. "To recover under § 1983, a plaintiff must prove '(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of St. Paul, 679 F.3d 698, 704 (8th Cir. 2012).

### B.  Analysis

#### 1.  Eleventh Amendment Immunity

In the Memorandum in Support of their Motion to Dismiss, Defendants claim as a threshold issue that as a matter of law, the Eleventh Amendment bars Plaintiff from recovering monetary damages from the MSOP, the DHS, and the individual Defendants in their official capacities. (Mem. in Supp., [Docket No. 12], 16 n.7, 18-19). Plaintiff disagrees, arguing that under the standards set forth in Harmon v. Auger, 768 F.2d 270, 277 (8th Cir. 1985), and Winslow v. Smith, 696 F.3d 716, 730-31 (8th Cir. 2012), Defendants are not entitled to qualified immunity. (Mem. in Opp., [Docket No. 15], 4-5).

As Defendants note in their Reply, however, sovereign immunity under the Eleventh Amendment is distinct from qualified immunity. See Kruger v. Nebraska, 820 F.3d 295, 301 (8th Cir. 2016) (holding that waiver of Eleventh Amendment immunity from suit in federal court "does not necessarily mean" that defendants waived their qualified immunity). This Court agrees that upon a facial review of the Complaint, the Eleventh Amendment does bar some of Plaintiff's claims.

The Eleventh Amendment prohibits lawsuits against a state and its agencies, regardless of the relief sought, unless the state has unequivocally consented to suit or Congress has abrogated

the states' immunity for a particular federal cause of action. <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978) (unless sovereign immunity is waived by state or expressly abrogated by U.S. Congress, suits against state and its board of corrections are barred by Eleventh Amendment, regardless of relief sought); <u>Enyeart v. Minnesota</u>, 408 F. Supp. 2d 797, 802 (D. Minn. 2006).

In her Complaint, the Plaintiff has failed to even allege that Minnesota has unequivocally consented to suit on the claims Plaintiff brings in her Complaint. Likewise, the Plaintiff has not even alleged that Congress has abrogated Minnesota's immunity for the putative federal causes of action asserted therein.

The MSOP is a facility operated by the Minnesota DHS, which is an agency of the State of Minnesota. <u>See</u>, <u>Daniels v. Jesson</u>, No. 13–cv–736 (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 22, 2014). Thus, a suit against the MSOP and the DHS must be construed as a suit against the State of Minnesota. <u>See</u>, <u>Geiger v. Minn. Dept. of Human Servs.</u>, No. 13–cv–2140 (JRT/LIB), 2013 WL 5596599, at *3 (D. Minn. Oct. 11, 2013). It follows, then, that the MSOP and the Minnesota DHS enjoy the same Eleventh Amendment immunity from suit as the State, regardless of the relief sought. <u>See</u>, <u>Pugh</u>, 438 U.S. at 782.

Because suits against the Minnesota DHS and the MSOP are barred by the Eleventh Amendment in the absence of circumstances which Plaintiff has not even alleged occurred in this case, the Court recommends **dismissing** Plaintiff's claims against Defendants MSOP and the Minnesota DHS.

The Eleventh Amendment also bars recovery of monetary damages from individual state officials alleged to have been acting in their official capacity. <u>See</u>, <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) (citations and quotations omitted) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."); <u>Hadley v. N. Ark. Cmty. Tech.</u>

Coll., 76 F.3d 1437, 1438 (8th Cir. 1996) ("A state agency or official may invoke the State's Eleventh Amendment immunity if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself."). The government and its officials are also immune from punitive damages under § 1983 because "considerations of history and policy do not support exposing a [state] to punitive damages for the bad-faith actions of its officials." See, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). In addition, the Eleventh Amendment bars § 1983 claims against a state and its officials because "[a] state is not a 'person' within the meaning of § 1983." See, Glasgow v. Nebraska, 819 F.3d 436, 441 n.5 (8th Cir. 2016).

Plaintiff will not be able to recover monetary relief (whether compensatory or punitive in nature) from the individual Defendants based on any of the claims alleged against them in their official capacities. Therefore, this Court recommends **dismissing** all of Plaintiff's official-capacity claims against individual Defendants which seek to recover monetary damages.

By contrast, "suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law." Fond du Lac Band of Chippewa Indians v. Carlson, 68 F.3d 253, 255 (8th Cir. 1995) (citing Ex Parte Young, 209 U.S. 123 (1908)). Dismissing Plaintiff's claims for monetary damages in respect to the official capacity claims against the individual Defendants and Plaintiff's claims against DHS and MSOP leaves Plaintiff's claim for declaratory relief, as well as her official-capacity claims for injunctive relief and individual-capacity claims for monetary damages and injunctive relief against Defendants Kesty, Gordon, Puffer, Moser, and the John and Jane Doe Defendants for the Court's further consideration.

### 2. **Declaratory Relief**

In her Complaint, Plaintiff requests

> a declaratory judgment, declaring that (1) Defendants unlawfully discriminated against Plaintiff in violation of the Civil Rights Act of 1964, Title II, and MHRA, and Equal Protection under [the] First and Fourteenth Amendments of the United States and Minnesota Constitutions and (2) Defendants' [*sic*] create a policy specifically related to transgender patients within the MSOP allowing for use of female name and pronouns.

(Compl., [Docket No. 1], 12). However, "in seeking declaratory relief, 'a plaintiff must be seeking more than a retrospective opinion that [s]he was wrongly harmed by the defendant." Smith v. Roy, No. 10-cv-2193 (JRT/TNL), 2012 WL 1004985, *5 (D. Minn. Jan. 25, 2012), report and recommendation adopted by Smith v. Fabian, No. 10-cv-2193 (JRT/TNL), 2012 WL 1004982, *1 (D. Minn. Mar. 26, 2012) (citations omitted). Thus, to the extent that Plaintiff seeks declaratory relief stating that Defendants have unlawfully discriminated against her, this Court recommends denying her request.

The latter part of Plaintiff's request for declaratory judgment asks the Court to order Defendants to create and implement a policy regarding transgender patients in the MSOP. This, too, is not relief properly sought through declaratory judgment. A declaratory judgment is "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." Black's Law Dictionary (9th ed. 2009). An injunction, on the other hand, is "[a] court order commanding or preventing an action." Id. Plaintiff's request that this Court order the creation of a transgender-patient policy at the MSOP is, by definition, a request for injunctive relief, as opposed to declaratory relief.

Therefore, because Plaintiff's only request for declaratory judgment seeks only a retrospective opinion that she was wrongly discriminated against by Defendants, this Court recommends **dismissing** Plaintiff's claims to the extent that they seek declaratory relief.

Dismissing Plaintiff's request for declaratory judgment leaves only Plaintiff's official-capacity claims for injunctive relief and individual-capacity claims for monetary damages and injunctive relief against Defendants Kesty, Gordon, Puffer, Moser, and the John and Jane Doe Defendants for the Court's further consideration. Thus, the Court turns to whether Plaintiff has alleged sufficient facts in her complaint to survive Defendants' Motion to Dismiss under Rule 12(b)(6). If she has not, her claims should be dismissed, regardless of whether she seeks injunctive relief or monetary damages.

### 3.   42 U.S.C. § 1983 Claims (Counts III and IV)

#### a.   Defendants' Personal Involvement

To the extent that Plaintiff's §1983 claims against the individual named Defendants in their individual capacities survive, Defendants argue that these claims fail because Plaintiff has failed to adequately plead Defendants' personal involvement in the illegal actions she alleges. (Mem. in Supp., [Docket No. 9], 7-10). Plaintiff disagrees, and notes in her Memorandum in Opposition the specific facts she contends adequately support her claims of Defendants' personal involvement. (Mem. in Opp., [Docket No. 15], 6-8).

Plaintiff's § 1983 claims allege that Defendants improperly denied or infringed upon Plaintiff's constitutional rights to equal protection, due process, and freedom of expression. (Compl., [Docket No. 1], 1012). "To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014) (citing Iqbal, 556 U.S. at 676)). Thus, to survive Defendants' current Motion to Dismiss, Plaintiff in the present case must have alleged each individually named Defendant's personal involvement in the asserted violations with "more than

labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." See, Twombly, 550 U.S. at 555.

Regarding Defendant Kesty, Plaintiff alleged in her Complaint that he, "in his individual and official capacity discriminated against and implemented, retained and carried out the denial of Plaintiffs' [*sic*] constitutional, statutory, and common law rights." (Compl., [Docket No. 1], 3). She also alleged that she "suffered numerous degrading and defaming actions from Defendant Kesty, to the point that she doesn't come out of the room when Defendant Kesty is on duty, unless it is for meals." (Id. at 7). In her Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiff also asserts that "Defendant Kesty had personal involvement in Plaintiff[']s BER's as he was the person who issued them" and reiterates that Defendant Kesty "made defaming and degrading comments to Plaintiff about his [*sic*] sexual/gender orientation." (Mem. in Opp., [Docket No. 15], 7-8).

These statements are not sufficient to meet the § 1983 requirement that she allege Defendant Kesty's personal involvement in an alleged violation of Plaintiff's federal statutory or constitutional rights. Even when Plaintiff alleges for the first time in her responsive Memorandum that Defendant Kesty issued her some BER's, she does not claim specifically that Defendant Kesty issued the BER for lying and misrepresentation as a result of Plaintiff signing her preferred name or that Defendant Kesty issued Plaintiff any other BER related to her transgender status. Instead, Plaintiff merely makes vague and conclusory allegations unsupported by any specific facts and, as such, those allegations are insufficient to support Plaintiff's § 1983 claims against Defendant Kesty.

As to Defendants Gordon, Puffer, and Moser, Plaintiff has made even fewer factual allegations regarding the nature of their individual involvement if any. Other than the merely

general assertion that each of these Defendants "discriminated against Plaintiff in his [*sic*] individual and official capacity and implemented, retained and carried out the denial of Plaintiffs' [*sic*] constitutional, statutory, and common law rights," (<u>see</u>, Compl., [Docket No. 1], 3-4), Plaintiff otherwise makes only conclusory allegations regarding these Defendants as a group. For example, Plaintiff states:  "Plaintiff has been punished for her identification as female and treated indifferent by staff at the MSOP" and "Defendants maintain a custom and practice of discrimination against Plaintiff based on his [*sic*] sexual gender identity." (<u>Id.</u> at 8). In another portion of the Complaint, Plaintiff similarly states:  "Defendants in their individual . . . capacities have denied Plaintiff the right to express herself as who she is as a person and therefore have denied equal protection that is afforded to other patients within the facility." (<u>Id.</u> at 11). There are no assertions as to any individual actions by either of these named Defendants.

In her Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiff claims that she pled sufficient facts in her Complaint to support the individual-capacity § 1983 claims against the named Defendants. (Mem. in Opp., [Docket No. 15], 6-8). In support, however, Plaintiff merely points this Court back to the conclusory allegations in her Complaint, and not to any specific factual allegations of individual involvement. For example, Plaintiff asserts:  "Plaintiff did allege how Randy Gordon was involved by stating he is on the BEU panel and as the director of the BEU he assigned Plaintiff with an amount of time, whereby punishing Plaintiff for asserting who she sees herself as a person." (<u>Id.</u> at 7). As with the previously discussed statements regarding Defendant Kesty, these merely conclusory allegations are not sufficient to satisfy the requirement that § 1983 claims against the named Defendants in their individual capacity must allege specific individualized involvement in the federal statutory or constitutional violations claimed. Even construing the pro se Complaint liberally and drawing all

reasonable inferences in Plaintiff's favor, the factual allegations contained in the Complaint do not "raise a right to relief above the speculative level." See, Twombly, 550 U.S. at 555. This failure is fatal to Plaintiff's individual-capacity § 1983 claims against the named Defendants, regardless of whether Plaintiff seeks monetary or injunctive relief, as Plaintiff may not obtain either type of relief on a claim that has been so inadequately pled that it cannot survive a 12(b)(6) motion to dismiss.

Accordingly, this Court recommends **dismissing** her individual-capacity § 1983 claims against the named Defendants.

### b.   Constitutional Violations

In addition, as Defendants note, even if the Complaint did sufficiently plead each of the named Defendants' personal and individualized involvement, Plaintiff has failed to sufficiently allege violations of Plaintiff's constitutional rights to equal protection, due process, and freedom of expression. This failure requires dismissal of Plaintiff's § 1983 claims against the individual Defendants, whether named in their official or individual capacities and whether injunctive relief or monetary damages are sought, as Plaintiff may not obtain relief on a § 1983 claim based on a violation of her constitutional rights without first adequately pleading a violation of those constitutional rights. See, 42 U.S.C. § 1983 (creating liability of a person who, under color of law causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"); Bowden v. Meinberg, 807 F.3d 877, 881 (8th Cir. 2015) ("A plaintiff seeking damages under 42 U.S.C. § 1983 must show first that the defendant's conduct violated a constitutional right . . . .").

Count III of the Complaint alleges violations of both equal protection and procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution. (Compl.,

[Docket No. 1], 10-11). To successfully assert a procedural due process claim, Plaintiff "had to plead both that [s]he was deprived of some life, liberty, or property interest protected by the Constitution and the [s]he was deprived of that property interest without sufficient process." See, Wong v. Minn. Dept. of Human Servs., 820 F.3d 922, 935 (8th Cir. 2016) (citations omitted). Plaintiff has alleged no insufficient process; therefore, even construing her Complaint liberally and making all reasonable inferences in her favor, Plaintiff has failed to sufficiently plead a plausible procedural due process claim.

Similarly, in order to adequately plead her equal protection claim and survive a Rule 12(b)(6) motion, Plaintiff needed to plead that Defendants treated her differently than similarly situated persons. See, Johnson v. City of Minneapolis, 152 F.3d 859, 862 (8th Cir. 1998). Instead, Plaintiff's argument is the opposite—that Defendants treated her the same as other MSOP patients, despite her transgender identification. Defendants required her, for example, to sign her legal name to a BER, just as other individuals at the MSOP must. (See, Mem. in Supp., [Docket No. 9], 13). Nor has Plaintiff pled any specific facts to support her claims that Defendants treated her differently motivated by her transgender status. Instead, she has made only conclusory generalized statements of such treatment. As stated in Twombly, 550 U.S. at 555, factual allegations in the Complaint must consist of "more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do."

Finally, the Complaint does not sufficiently plead facts to support her claim that Defendants violated Plaintiff's rights under the First Amendment to freedom of expression in Count IV. Plaintiff only broadly asserts that the First Amendment "protects the expression of all viewpoints, regardless of either their popularity or a lack of general acceptance, or even the fears that particular opinions may engender." (Compl., [Docket No. 1], 12). However, it is also well-

accepted that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." See, Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981) (citations omitted). Even protected First Amendment activities "are subject to reasonable time, place, and manner restrictions," although those restrictions "'may not be based upon either the content or subject matter of speech.'" Id. at 647-48 (citations omitted).

Before restrictions are evaluated, however, there must be a showing of protected activity. Most of Plaintiff's allegations of First Amendment violations in her Complaint are conclusory assertions without specific factual support, such as that Defendants have issued "numerous BER's [to Plaintiff] related to [her] sexual identification." (Compl., [Docket No. 1], 6). Similarly, Plaintiff claims generally that Defendant Kesty subjected her to "numerous degrading and defaming actions," (Id. at 7); that Defendants' "behavior . . . willfully violates [the MSOP's anti-discrimination] policy," (Id.); that "Plaintiff has been punished for her identification as female," (Id. at 8); and that "Defendants maintain a custom and practice of discrimination against Plaintiff based on his [sic] sexual gender identity." (Id.). Nowhere in the Complaint does Plaintiff more specifically identify any of the circumstances under which any of these actions with the exception of the BER Plaintiff received after signing another BER with her preferred name rather than her legal given name.[3]

In any event, even if the Court considers the BER issued after Plaintiff signed her preferred name to another BER as the activity that allegedly violated Plaintiff's First Amendment right to expression, Plaintiff has provided no legal authority (and the Court has

---

[3] Even in her Memorandum in Opposition, Plaintiff merely reasserts that she "has clearly pled factual content about the denial of expressive conduct portrayed by the Defendants contrary to what Defendants attempt to persuade this [C]ourt to believe," then refers this Court generally to her Complaint. (Mem. in Opp., [Docket No. 15], 9). At no point does Plaintiff provide any additional specific facts sufficient to support her claims. (Id. at 9-12).

found none in its independent research) for the implied assertion that signing her preferred name to a BER is an activity protected by the First Amendment in the instant context and circumstance.

To the contrary, even where courts have found that the First Amendment requires prison acknowledgement of a name other than the name under which the prisoner was committed, it is either a legally-changed name and/or a name adopted for religious purposes. See, Salaam v. Lockhart, 905 F.2d 1168, 1169-70 (8th Cir. 1990) (holding that prison must reform its records to allow petitioner to receive services and information in his legal name, which he had changed for religious reasons, as well as the name under which he was committed); Felix v. Rolan, 833 F.2d 517, 519 (5th Cir. 1987) (holding that prison's requirement that inmate sign into the library with both his committed name and his legally-changed Muslim name was justified by the state's "legitimate interest in prison security" and the corresponding requirement of "an efficient system of identification and administration of prisoners within its custody"); Gilbert v. Fox, No. 16-cv-354-GPG, 2016 WL 931287, *4 (D. Co. March 11, 2016) (listing cases that have affirmed prison policies requiring prisoners to use committed names in addition to religious names and cases affirming prison's refusal to change records to substitute legally changed name for committed name). The Court's independent research has not found any cases holding that a transgendered inmate or civil committee has a constitutionally protected right to sign official documents such as BERs with a name other than his or her legal name.

Here, Plaintiff has not legally changed her name from her birth name, nor does she assert that she wishes to be addressed by her preferred name for religious reasons. Therefore, under relevant case law, the First Amendment does not appear to protect Plaintiff's desire to sign her chosen name to BERs in place of her legal birth name. This First Amendment protection is

necessary for Plaintiff to have pled a § 1983 claim based upon a violation of her First Amendment rights.

Even liberally construing the Complaint as a whole, taking all facts pled therein as true, and drawing all reasonable inferences in Plaintiff's favor, this Court must conclude that Plaintiff has failed to sufficiently plead facts that establish the constitutional violations upon which Plaintiff bases her § 1983 claims, as she must in order to survive a Rule 12(b)(6) motion to dismiss on her § 1983 claims against the named Defendants Kesty, Gordon, Puffer, and Moser, whether those claims requested monetary, declaratory, or injunctive relief.

Therefore, even if it were assumed only for the sake of argument that Plaintiff had sufficiently pled the named Defendants' personal involvement in the actions upon which she bases her claims, this Court would still recommend **dismissing** Plaintiff's remaining § 1983 claims against the named Defendants, in either their individual or official capacities for failure to sufficiently allege actionable federal statutory or constitutional violations.

### 4.  Civil Rights Act of 1964 Claim (Count I)

Defendants further ask the Court to dismiss Count I of the Plaintiff's Complaint which alleged a claim under the Title II of the Civil Rights Act of 1964 ("Title II") for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Defendants argue that Title II does not prohibit discrimination based on transgender status, and in any event, it applies only to discrimination in "place[s] of public accommodation."[4] (Mem. in Supp., [Docket No. 9], 11-12). Plaintiff replies, without citation to legal authority, that "Title II is also about sexual orientation/gender" and the MSOP is a place of public accommodation under Title II because "it

---

[4]Defendants also argue that this Court must dismiss Count I for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), because Title II does not allow suits for damages. (Mem. in Supp., [Docket No. 9], 10-11). Plaintiff replies that she does not seek damages under her Civil Rights Act claim. (Mem. in Opp., [Docket No. 15], 8). Therefore, the Court need not address the damages argument.

does accommodate the public in keeping what Minnesota has deemed to the worst of the worst sex offenders." (Mem. in Opp., [Docket No. 15], 8). Finally, Plaintiff claims that, in the alternative, this Court should liberally construe her claim in Count I as having been brought instead under Title III of the Civil Rights Act of 1964. (Id.).

Title II, 42 U.S.C. § 2000a(a), prohibits "discrimination or segregation on the ground of race, color, religion, or national origin" with regards to "enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation." The Complaint does not allege that Defendants discriminated against Plaintiff because of her race, color, religion, or national origin. Moreover, this Court has found no case that reads Title II to include discrimination due to transgender status as a basis for a statutory claim under Title II.

In addition, 42 U.S.C. § 2000a(b) defines "places of public accommodation" to include certain "establishment[s] which provide lodging to transient guests"; facilities "principally engaged in selling food for consumption on the premises"; "place[s] of exhibition or entertainment," such as theaters and sports arenas; and any other establishment holding itself out as serving patrons of a covered establishment which is also located within the premises of a covered establishment or within the premises of which is physically located any such covered establishment. The MSOP does not fall within any of these definitions. Therefore, the MSOP is not a place of public accommodation for purposes of Title II analysis, and therefore, it does not invoke the statutory protections provided in Title II.

The Court finds that even when it liberally construes the Complaint as a whole, taking all facts pled therein as true and drawing all reasonable inferences in Plaintiff's favor, she has failed to plead sufficient facts to withstand a Rule 12(b)(6) motion to dismiss on her Title II claims asserted in Count I of her Complaint. Plaintiff's mere assertion that her treatment at the MSOP

18

falls within the protections of Title II is based on the erroneous legal conclusion that the MSOP is a place of "public accommodation" and that the provisions of Title II prohibit discrimination based on transgender status. For all of these reasons, this Court recommends **dismissal** of Plaintiff's Title II claims for failure to state a claim upon which relief may be granted.

Finally, even Plaintiff's late-asserted suggestion that her claim would survive under Title III of the Civil Rights Act, 42 U.S.C. § 2000b, et seq., is incorrect. Title III authorizes suits by the Attorney General, not private citizens. See, Regents of Univ. of California v. Bakke, 438 U.S. 265, 381 (1978); 42 U.S.C. § 2000b(a).

### 5.   MHRA Claim (Count II)

Plaintiff's remaining claim is based on alleged violations of the Minnesota Human Rights Act, Minn. Stat. § 363A, et seq. Because Plaintiff no longer has any actionable federal-law claims, the Court should no longer exercise supplemental jurisdiction over her state-law claims under 28 U.S.C. § 1367. See, Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir.) ("The Supreme Court has noted that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'"), cert. denied, 543 U.S. 810 (2004).

Accordingly, the Court recommends that the Court decline to continue to exercise supplemental or pendant jurisdiction over the Plaintiff's remaining state-law claims in Count II, and that they be **dismissed** without prejudice.[5]

### III.   CONCLUSION

---

[5] Without commenting on the merits of Plaintiff's state-law claims, the Court notes dismissal without prejudice would leave Plaintiff free to pursue her state-law claims in state court.

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss Plaintiff's Complaint, [Docket No. 7], be **GRANTED;**

2. Plaintiff's claims against the MSOP and the Minnesota DHS be **DISMISSED with prejudice**;

3. Plaintiff's § 1983 claims for monetary and punitive damages against all individual named Defendants in their official capacities be **DISMISSED with prejudice;**

4. Plaintiff's § 1983 claims for monetary and punitive damages against all individual named Defendants in their individual capacities be **DISMISSED without prejudice;**

5. Plaintiff's § 1983 claims for injunctive and declaratory relief against all individual named Defendants in their official or individual capacities be **DISMISSED without prejudice**;

6. Plaintiff's Title II of the Civil Rights Act of 1964 claims against all individual Defendants be **DISMISSED with prejudice;**

7. The Court not continue to exercise supplemental or pendant jurisdiction, and therefore, Plaintiff's Minnesota Human Rights Act claims against all Defendants be **DISMISSED without prejudice**.

Dated: January 3, 2017                                    s/Leo I. Brisbois_____
                                                          The Honorable Leo I. Brisbois
                                                          United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.